UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CONSERVATION CONGRESS,<br><br>             Plaintiff,<br><br>     v.<br><br>UNITED STATES FOREST SERVICE, and UNITED STATES FISH AND WILDLIFE SERVICE,<br><br>             Defendants. | CIV. NO. 2:12-02416 WBS KJN<br><br>MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO LIFT THE INJUNCTION |

----oo0oo----

     Plaintiff Conservation Congress brought this action against the United States Forest Service ("Forest Service") and the United States Fish and Wildlife Service ("FWS") challenging defendants' actions in connection with three proposed vegetation clearance projects in the Mendocino National Forest. In its June 6, 2013 Order, this court granted plaintiff's motion for summary judgment with respect to the Tatham Ridge Fuels Project ("Tatham Project") and enjoined the Forest Service from beginning its

1

proposed actions until it prepared "legally adequate NEPA documentation for the Tatham Project." (June 6, 2013 Order at 18 (Docket No. 55).) Presently before the court is defendants' motion to lift the injunction pursuant to Federal Rule of Civil Procedure 60(b)(5). (Docket No. 74.)

I.   Factual and Procedural Background

According to the Forest Service, the Tatham Project is designed to reduce wildfire hazard, accelerate tree growth for sustained timber productivity, and develop late-successional habitat in accordance with the Buttermilk Late Successional Reserve. The Tatham Project will involve (1) 1,300 acres of plantation thinning by removing small trees to allow larger trees to grow more quickly; (2) 879 acres of fuel break construction; and (3) 1,800 acres of prescribed burning of the understory to reduce fuel loading of forests.

The Forest Service created a biological assessment ("BA") for the Tatham Project and authorized the project by a decision memorandum issued on May 25, 2012. The Forest Service did not prepare an environmental assessment ("EA") or an environmental impact statement ("EIS") because it determined the project qualified for a categorical exclusion and no extraordinary circumstances existed.

In its June 6, 2013 Order, this court found that defendants' determination that no extraordinary circumstances existed was arbitrary and capricious. (June 6, 2013 Order at 16, 18.) As a result, the court ordered the Forest Service to "prepare legally adequate NEPA documentation" and enjoined the Tatham Project. (Id. at 18.)

2

In an effort to comply with this Court's Order, the Forest Service issued a supplement to its decision memorandum ("Supplement") explaining why it does not believe extraordinary circumstances preclude the use of a categorical exclusion for the Tatham Project. (Defs.' Mem. Ex. A, Suppl. to Decision Mem. ("Suppl.") (Docket No. 75-1).)

II. Discussion

    A. Standard of Review

Under Rule 60(b)(5), the court may relieve a party "from a final judgment, order, or proceeding" if "the judgment has been satisfied, released or discharged" or if "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Applying the injunction prospectively is no longer equitable if "'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" Horne v. Flores, 557 U.S. 433, 447 (2009) (citation omitted).

    B. The National Environmental Policy Act and Categorical Exclusions

When a major federal action may affect the environment, the National Environmental Policy Act ("NEPA") requires the acting agency to undergo a scoping process in which it solicits comments and input from the public and other agencies to identify specific issues to address and study. 40 C.F.R. § 1501.7. An EA shall be prepared when the agency has not yet determined whether an EIS is necessary and must discuss the need for the proposed project, alternatives, and the environmental impacts of the proposed action and alternatives. Id. § 1508.9; 36 C.F.R.

3

§ 220.7.  If the agency determines that the proposed action will significantly impact the environment, it must prepare an EIS and present it to the public for notice and comment.  40 C.F.R. §§ 1501.4, 1503.1(a).

Agencies may also develop "categorical exclusions" from the EA/EIS requirement for classes of actions that do not "have a significant impact on the human environment."  Id. § 1508.4; Alaska Ctr. for Env't v. U.S. Forest Serv., 189 F.3d 851, 857 (9th Cir. 1999).  "Application of a categorical exclusion is not an exemption from NEPA; rather, it is a form of NEPA compliance, albeit one that requires less than where an environmental impact statement or an environmental assessment is necessary."  Ctr. for Biological Diversity v. Salazar, 706 F.3d 1085, 1096 (9th Cir. 2013).  In this case, the Forest Service applied its categorical exclusion for "[t]imber stand and/or wildlife habitat improvement activities that do not include the use of herbicides or do not require more than 1 mile of low standard road construction."  36 C.F.R. § 220.6(e)(6).

Even where an action falls within a categorical exclusion, an agency must ensure "there are no extraordinary circumstances related to the proposed action."  Id. § 220.6(a); Ctr. for Biological Diversity, 706 F.3d at 1096.  An extraordinary circumstance is when "a normally excluded action may have a significant environmental impact."  40 C.F.R. § 1508.4.  One resource condition that must be considered in determining whether extraordinary circumstances warrant further analysis in an EA or an EIS is "federally listed threatened or endangered species or designated critical habitat."  36 C.F.R.

4

1  § 220.6(b).  The "mere presence of" this resource condition "does
2  not preclude use of a categorical exclusion."  Id.  Rather, it is
3  "the degree of the potential effect of a proposed action on these
4  resource conditions that determines whether extraordinary
5  circumstances exist."  Id.  If "there is substantial evidence in
6  the record that exceptions to the categorical exclusion may
7  apply, the agency must at the very least explain why the action
8  does not fall within one of the exceptions."  California v.
9  Norton, 311 F.3d 1162, 1177 (9th Cir. 2002).

10       In Norton, the government applied a categorical
11  exclusion and approved lease suspensions without preparing any
12  environmental documentation.  Id. at 1175.  The Ninth Circuit
13  held that because there was substantial evidence in the record
14  that exceptions to the categorical exclusion were applicable, a
15  brief statement that the categorical exclusion was being invoked
16  was insufficient.  Id. at 1176.  The Ninth Circuit affirmed the
17  district court's order that the government provide "a reasoned
18  explanation for its reliance on the categorical explanation,
19  including an explanation of why the exceptions do not apply."
20  Id. at 1178.  The Ninth Circuit did not, however, specifically
21  require an EA or EIS.  Instead, it affirmed the district court's
22  decision to leave open the question of whether an EA or EIS would
23  be required.  Id.

24       Plaintiff argues that the Supplement the Forest Service
25  prepared is legally inadequate under NEPA because, at a minimum,
26  the Forest Service was required to prepare an EA subject to
27  public comment.  (Pl.'s Opp'n at 9-10 (Docket No. 76).)  However,
28  as discussed above, an agency need not prepare an EA or EIS if a

categorical exclusion applies and there are no extraordinary circumstances. A categorical exclusion is a legitimate form of NEPA compliance.

Further, this court's June 6, 2013 Order did not hold that the potential impact of the Tatham Project on the northern spotted owl--a listed endangered species--constituted an extraordinary circumstance necessitating further analysis in an EA. Instead, the court found that the Forest Service's "explanation was not sufficient to establish that extraordinary circumstances were not present." (June 6, 2013 Order at 16-17 n.4 (emphasis added).) The court found substantial evidence in the record that the Tatham Project would occur in the nesting/roosting and foraging habitat of the northern spotted owl but insufficient explanation of why this did not constitute an extraordinary circumstance. Accordingly, the court imposed an injunction unless and until the Forest Service issued "a reasoned explanation" but did not necessarily require it to prepare an EA or EIS.[1]  See Norton, 311 F.3d at 1178. As will be discussed in

---

[1] On page twenty-five of the Order the court held that the record did not enable the court to determine that the Tatham Project would have significant impacts on the environment warranting an EIS. (June 6, 2013 Order at 25.) This court quoted from Citizens for Better Forestry v. U.S. Department of Agriculture, 481 F. Supp. 2d 1059 (N.D. Cal. 2007), which found that where an agency has invoked a categorical exclusion and not prepared an EA that considers whether significant effects would exist, the court should not make a determination that an EIS is necessary. Citing to this case, this court stated: "Only after preparation of an EA will the matter be ready for judicial review, id. at 1090, and if the USFS chooses to prepare an EIS, this claim would be moot." The court was not suggesting that the Forest Service needed to prepare an EA in order to comply with its Order but rather agreeing with the finding in Citizens for Better Forestry that a determination regarding the necessity of

greater detail below, the Forest Service's Supplement provides a reasonable and detailed explanation of why there are no extraordinary circumstances and is therefore an adequate NEPA document.

### C. Sufficiency of the Supplement

Plaintiff next argues that even if defendants did not need to prepare an EA, the Supplement does not refute the evidence in the record suggesting an extraordinary circumstance because of the potential impacts of the Tatham Project on the northern spotted owl. (Pl.'s Opp'n at 9.) Among other arguments, plaintiff contends that the Supplement fails to acknowledge the importance of removing foraging habitat, the cumulative effects of the treatment activities in the context of other regional projects, and that the project area is surrounded by private land that does not provide habitat where the northern spotted owl can relocate during treatment activities. (Id. at 10-21.) Lastly, plaintiff argues that because the Forest Service failed to conduct surveys to locate northern spotted owls in the two-and-a-half years since this court's decision, it does not know where owls are present and the limited operating periods ("LOPs") for historic nesting sites will not necessarily protect current nesting areas. (Id. at 14.)

Despite plaintiff's objections, the court finds that the Forest Service's Supplement sufficiently explains why it does not believe any extraordinary circumstances exist. First, as discussed in detail in the June 6, 2013 Order, the Forest Service

---

an EIS cannot be made without an EA.

7

does not need to address the cumulative impacts of regional projects in the abbreviated categorical exclusion process. (June 6, 2013 Order at 21.) Further, while the Forest Service did not conduct surveys to identify new northern spotted owl nest sites, it explained that if nests are discovered during project activities a wildlife biologist will determine the buffer necessary for nest protection and an LOP will be implemented. (Suppl. at 8.) The Forest Service also "conservatively assumed any nesting/roosting habitat to be potentially occupied, and therefore imposed LOPs on all such areas." (Id. at 7.)

More importantly, the Supplement makes clear that while the BA reported that the Tatham Project "may affect, but is not likely to adversely affect" the northern spotted owl, the degree of potential effects on the species is low enough that a categorical exclusion is still appropriate. (Id. at 3.) The Forest Service discussed at length how the Tatham Project will lessen, not aggravate, the threat of habitat loss by decreasing the risk of wildfires and density-related insect and disease outbreaks. (Id. at 6.) It will not aggravate the threat posed by barred owls or downgrade or remove any nesting/roosting or foraging habitat. (Id.)

The Forest Service also found that it is "extremely unlikely" that the Tatham Project will directly harm or harass individual northern spotted owls not only because nest sites will be protected by LOPs but also because the treatment activities will "be short-term, and confined to a sub-set of treatment units at any given time." (Id.) As a result, individuals will be able to move to nearby suitable habitat temporarily. (Id.) While

8

1  plaintiff counters that there is not "abundant" nearby habitat
2  because the project area is surrounded by private property, the
3  Forest Service makes clear that the northern spotted owls will be
4  able to move within the project area because the treatment units
5  will be "worked on sequentially" so that "only a small portion of
6  the Project would be active at any given time" and each unit will
7  be completed within one to three weeks.  (Id. at 6 n.7.)

8        The Supplement also explains that the Tatham Project
9  will not have significant adverse effects on northern spotted owl
10 habitat as all nesting/roosting and foraging habitat will
11 continue to function as habitat after treatment.  (Id. at 10.)
12 While certain habitat characteristics will be altered, the Tatham
13 Project seeks to protect the key habitat components, such as
14 canopy closure in the overstory, large trees and snags, and
15 decadent conifers.  (Id.)  Lastly, clearing vegetation for
16 landing construction on twelve half-acre landings scattered
17 throughout 7,528 acres of dispersal habitat will not adversely
18 affect dispersal.  (Id. at 11.)

19       Accordingly, the court must find that the Forest
20 Service provided a reasoned explanation for why the presence of
21 northern spotted owl habitat within the Tatham Project does not
22 constitute an extraordinary circumstance in its Supplement.  The
23 Supplement satisfies the court's judgment and qualifies as a
24 significant change in the factual conditions that makes applying
25 the injunction prospectively inequitable.

26       IT IS THEREFORE ORDERED that defendants' motion to lift
27 the injunction (Docket No. 74) be, and the same hereby is,
28 GRANTED.  The Clerk of the Court is directed to enter judgment in

favor of defendants and to close this case.

Dated:    March 23, 2016

/s/ William B. Shubb
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE